UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Case No: 8:19-BK-1274-CPM

NATIONAL RADIOLOGY CONSULTANTS, P.A.,

Debtor.                                    Chapter 11

_____/

## PLAN OF NATIONAL RADIOLOGY CONSULTANTS, P.A.

Daniel E. Etlinger
Florida Bar No. 77420
**Jennis Law Firm**
Address: 606 East Madison Street
Tampa, Florida 33602
Email: detlinger@jennislaw.com
Telephone: (813) 229-2800
Counsel to the Debtor and Debtor-in-Possession

Dated:  May 30, 2019

THIS PLAN HAS NOT BEEN CONFIRMED BY THE BANKRUPTCY COURT.  THE HEARING TO CONSIDER THE CONFIRMATION OF THIS PLAN PURSUANT TO SECTION 1129 OF THE BANKRUPTCY CODE **IS CURRENTLY SCHEDULED FOR _____, 2019 AT _____ ____.M EASTERN TIME.**  THE DEBTOR RESERVES THE RIGHT TO MODIFY AND/OR SUPPLEMENT THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE PLAN.  THE DEBTOR IS CURRENTLY SOLICITING VOTES ON THE PLAN.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 1
ARTICLE 1    **DEFINITIONS** .............................................................................................................. 1
ARTICLE 2    **TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** ..................... 7
    2.1 ........ **Administrative Expense Claims.** ......................................................................... 8
    2.2 ........ **United States Trustee Fees.** ................................................................................. 9
    2.3 ........ **Priority Tax Claims.** ............................................................................................ 9
    2.4 ........ **Third Party Discharge and Discharge Injunction** ............................................. 9
ARTICLE 3    **CLASSIFICATION OF CLAIMS AND INTERESTS** ....................................................... 10
    3.1 ........ **Class 1 - Unsecured Priority Wage Claims.** ..................................................... 10
    3.2 ........ **Class 2 – Secured Claim of JPMorgan Chase Bank, N.A.** ............................... 11
    3.3 ........ **Class 3 – Administrative Convenience Class** .................................................... 11
    3.4 ........ **Class 4 – Critical Vendors** ............................................................................... 11
    3.5 ........ **Class 5 – Unsecured Wage Claims** .................................................................. 11
    3.6 ........ **Class 6 – General Unsecured Claims** ............................................................... 11
    3.7 ........ **Class 7 – Equity Interests.** ................................................................................ 11
ARTICLE 4    **TREATMENT OF ALLOWED CLAIMS AND INTERESTS** ............................................. 11
    4.1 ........ **Class 1 - Unsecured Priority Wage Claims.** ..................................................... 12
    4.2 ........ **Class 2 – Secured Claim of JPMorgan Chase Bank, N.A.** ............................... 12
    4.3 ........ **Class 3 – Administrative Convenience Class** .................................................... 12
    4.4 ........ **Class 4 – Critical Vendors** ............................................................................... 13
    4.5 ........ **Class 5 – Unsecured Wage Claims** .................................................................. 13
    4.6 ........ **Class 6 – General Unsecured Claims** ............................................................... 13
    4.7 ........ **Class 7 – Equity Interests.** ................................................................................ 14
ARTICLE 5    **MEANS FOR EXECUTION OF PLAN** .......................................................................... 14
    5.1 ........ **Plan Funding** ..................................................................................................... 14
    5.2 ........ **Funding of Operations.** ..................................................................................... 14
    5.3 ........ **Continued Corporate Existence** ........................................................................ 14
    5.4 ........ **Disbursing Agent.** .............................................................................................. 14
    5.5 ........ **Corporate Action.** .............................................................................................. 16
    5.6 ........ **Estimates and Payments of Claims and Interests.** ............................................ 16
    5.7 ........ **Addresses for Distributions to Holders of Allowed Claims.** ............................ 16
    5.8 ........ **Disputed Claims.** ............................................................................................... 16
    5.9 ........ **Unclaimed Property.** ......................................................................................... 17
    5.10 ...... **Exoneration and Reliance.** ................................................................................ 18
    5.11 ...... **Effectuating Documents and Further Transactions.** ......................................... 18
ARTICLE 6    **EFFECTS OF PLAN CONFIRMATION** ........................................................................ 18
    6.1 ........ **No Liability for Tax Claims.** .............................................................................. 18
    6.2 ........ **Vesting.** .............................................................................................................. 18
    6.3 ........ **Retention and Enforcement of Claims or Interests.** ......................................... 19
ARTICLE 7    **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................... 19
    7.1 ........ **Assumed Executory Contracts and Unexpired Leases.** .................................... 19
ARTICLE 8    **EFFECTUATION AND SUPERVISION OF THE PLAN** ................................................... 19
    8.1 ........ **Jurisdiction.** ....................................................................................................... 19
    8.2 ........ **General Retention.** ............................................................................................. 20
    8.3 ........ **Specific Purposes.** ............................................................................................. 20
ARTICLE 9    **CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS** ..................... 21
    9.1 ........ **Conditions to Confirmation.** ............................................................................. 21
    9.2 ........ **Conditions to Effectiveness.** .............................................................................. 22
    9.3 ........ **Waiver.** ............................................................................................................... 22

**ARTICLE 10    ACCEPTANCE OR REJECTION OF PLAN** ........................................................**22**
    **10.1** ...... **Each Impaired Class Entitled to Vote Separately.** ........................................**22**
    **10.2** ...... **Class Acceptance Requirement.** ........................................................................**22**
    **10.3** ...... **Cramdown.** ..........................................................................................................**23**
**ARTICLE 11    MISCELLANEOUS PROVISIONS** ................................................................**23**
    **11.1** ...... **Revocation of Plan.** ..........................................................................................**23**
    **11.2** ...... **Headings.** ............................................................................................................**23**
    **11.3** ...... **Due Authorization by Holders of Claims.** ......................................................**23**
    **11.4** ...... **Time.** ....................................................................................................................**23**
    **11.5** ...... **Transactions on Business Days.** ......................................................................**24**
    **11.6** ...... **Payment on Distribution Dates.** ......................................................................**24**
    **11.7** ...... **Fractional Dollars.** ............................................................................................**24**
    **11.8** ...... **Unclaimed or De Minimis Distributions.** ........................................................**24**
    **11.9** ...... **Modification of Payment Terms.** ....................................................................**24**
    **11.10** .... **Entire Agreement.** ............................................................................................**24**
    **11.11** .... **Confirmation Order.** ........................................................................................**25**
    **11.12** .... **Further Authorizations.** ..................................................................................**25**
    **11.13** .... **Exemption from Securities Laws.** ....................................................................**25**
    **11.14** .... **Transfer Taxes.** ................................................................................................**25**
    **11.15** .... **Recordable Order.** ............................................................................................**25**
    **11.16** .... **Governing Law.** ................................................................................................**25**
    **11.17** .... **Severability.** ......................................................................................................**26**
    **11.18** .... **No Interest.** ........................................................................................................**26**
    **11.19** .... **No Attorneys' Fees.** ..........................................................................................**26**
    **11.20** .... **Consent to Jurisdiction.** ..................................................................................**26**
    **11.21** .... **Setoffs.** ................................................................................................................**26**
    **11.22** .... **Successors and Assigns.** ....................................................................................**26**
    **11.23** .... **Reservation.** ......................................................................................................**27**
**ARTICLE 12    MODIFICATION OF PLAN** ..........................................................................**27**
    **12.1** ...... **Modification of Plan.** ......................................................................................**27**
    **12.2** ...... **Notices.** ..............................................................................................................**27**

---

## INTRODUCTION

---

Debtor National Radiology Consultants, P.A. proposes the following Plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code (defined in Section 1.11 below). For a discussion of the Debtor's assets and liabilities, businesses, history and operations; and, for an analysis and summary of the Plan, reference should be made to the *Disclosure Statement in Connection with Plan of National Radiology Consultants, P.A.*, dated May 30, 2019. The Debtor is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in interpreting the Plan.

**1.1** "<u>Administrative Expense</u>" means **(A)** any cost or expense of administration of the Bankruptcy Case under Sections 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claims Bar Date or other applicable deadline established by the Bankruptcy Court, including **(i)** any Allowed OCB Administrative Claims, **(ii)** any cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor-in-Possession in the ordinary course of their businesses after the Petition Date or through an Allowed Section 503(b)(9) Claim, **(iii)** any payment required to be made to cure a default under an unexpired lease or Executory Contract assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code, to the extent Allowed by a Final Order of the Bankruptcy Court, **(iv)** any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court, **(v)** any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Post-Petition, and **(vi)** compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Bankruptcy Code § 330(a) or § 331 (including any amounts held back pursuant to an order of the Bankruptcy Court); and **(B)** all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**1.2** "<u>Administrative Expense Claim</u>" means any Allowed Claim for the payment of any Administrative Expense.

**1.3** "<u>Administrative Expense Claims Bar Date</u>" means, unless otherwise ordered by the Bankruptcy Court, the day established by the Federal Rules of Bankruptcy Procedure as the last day for filing an application or other Bankruptcy Court approved pleading for an Administrative Expense Claim.

**1.4** "<u>Affiliate</u>" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.5** "<u>Allowed</u>" means and includes, with respect to any Claim or Equity Interest, any Claim (other than a Disputed Claim) or Equity Interest that is Allowed under Section 502 or 503 of the Bankruptcy Code, applicable Bankruptcy Rules, and/or Final Order of the Bankruptcy Court.

**1.6** "<u>Allowed Amount</u>" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the estimated amount of such Claim as determined pursuant to an estimation order of the Bankruptcy Court. No amount shall be Allowed for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

**1.7** "<u>Anniversary Date</u>" means the calendar date (or first Business Day thereafter) that falls one year after the Effective Date and the same calendar date (or first Business Day thereafter) of each succeeding calendar year.

**1.8** "<u>Assets</u>" means all assets of the Debtor, or any nature whatsoever, including, without limitation, the Personal Property, claims of right, interests in contracts, and every other form of property whether real or personal, tangible or intangible, and wherever located.

**1.9** "<u>Ballot</u>" means the ballot accompanying the Disclosure Statement provided to each Holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan.

**1.10** "<u>Bankruptcy Case</u>" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

**1.11** "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u>, as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

**1.12** "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Bankruptcy Case or, to the extent the reference is withdrawn, the District Court.

**1.13** "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Bankruptcy Case, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

**1.14** "Bar Date" means the date fixed by the Bankruptcy Court by which Persons asserting a Claim against the Debtors, and who are required to file a Proof of Claim on account of such Claim, must file a Proof of Claim or be forever barred by asserting a Claim against the Debtors or the Debtors' Property.

**1.15** "Business Day" means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

**1.16** "Cash" means lawful currency of the United States of America and its equivalents.

**1.17** "Causes of Action" means all Claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person.

**1.18** "Claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

**1.19** "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 4 of the Plan.

**1.20** "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

**1.21** "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of the Plan.

**1.22** "Confirmation of the Plan" or "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

**1.23** "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.24** "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

**1.25** "Creditor" or "Claimant" shall have the meaning ascribed to such term in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against Property of the Debtor as set forth in Section 102(2) of the Bankruptcy Code.

**1.26** "Debtor" means National Radiology Consultants, P.A.

**1.27** "Debtor-In-Possession" means the Debtor in its capacity as provided under Section 1101(1) of the Bankruptcy Code, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

**1.28** "Deficiency Claim" means any Allowed Unsecured Claim arising **(A)** under Section 1111(b)(1)(A) of the Bankruptcy Code, or **(B)** from an agreement or determination that the value of Collateral securing a particular Claim is less than the total amount of such Allowed Claim.

**1.29** "Disbursing Agent" means the person selected as of the Effective Date, by the Debtor, and approved by the Bankruptcy Court to hold, liquidate, and distribute any property conveyed to the Unsecured Claims Fund.  The Disbursing Agent shall also analyze and prosecute objections to Claims and perform those duties specified in Article 7 of the Plan.

**1.30** "Disclosure Statement" means the disclosure statement (including all annexes, attachments, exhibits, and schedules attached thereto or referenced therein), as such disclosure statement may be amended or modified from time to time for Plan approval, whether conditional or final, by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.31** "Disclosure Statement Hearing Order" means one or more Orders of the Bankruptcy Court conditionally (and/or finally) approving the Disclosure Statement as containing "adequate information", as being otherwise in accordance with Section 1125 of the Bankruptcy Code, and scheduling such deadlines, hearings, and addressing other matters as the Bankruptcy Court may deem appropriate.

**1.32** "Disputed Claim" means a Claim that has not been Allowed by a Final Order of the Bankruptcy Court as to which **(A)** a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and **(B)** an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and any such objection has not been **(i)** withdrawn, **(ii)** overruled or denied in whole or part by a Final Order of the Bankruptcy Court, or **(iii)** granted in whole or part by a Final Order of the Bankruptcy Court, and a Claim shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if **(a)** any corresponding Claim has been scheduled in the Schedules as disputed, Contingent, or unliquidated or **(b)** such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

**1.33** "Disputed Claims Reserve" shall mean the reserve of Cash to be established on and maintained following the Effective Date by the Debtor in an amount the Debtor estimates (or, upon request of a Holder of a Disputed Claim, determined by the Bankruptcy Court) to be reasonably sufficient to satisfy payments on account of any Disputed Claims that have not been withdrawn or determined as of the Effective Date, or subsequently withdrawn or determined as of any Distribution Date.

**1.34** "Distribution" means the Distribution in accordance with this Plan of Cash or other Property, as the case may be.

**1.35** "Distribution Date" means, as context requires, the date **(A)** for payments to be made on the Effective Date or **(B)** such other dates upon which Distributions of Property are to occur under the Plan.

**1.36** "Effective Date" means, and shall occur on, the first (1st) Business Day that is at least fifteen (15) days following the entry of the Confirmation Order and upon which all of the conditions to occurrence of the Effective Date contained in Section 9 of the Plan have been satisfied or waived by the Debtor.

**1.37** "Entity" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

**1.38** "Equity Interest(s)" means any equity interest in the Debtor.

**1.39** "Estate" means the estate created pursuant to Section 541 of the Bankruptcy Code.

**1.40** "Estimated Amount" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against a Debtor which is Contingent, unliquidated or disputed, for the purpose of: **(A)** allowance under Section 502(c) of the Bankruptcy Code or **(B)** assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Section 1129(b)(1) and (2) of the Bankruptcy Code.

**1.41** "Estimation Order" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of a Claim against the Debtor.

**1.42** "Executory Contract" means any contract, lease, settlement agreement, or other arrangements between the Debtor and another Person that is executory and/or unexpired pursuant to Section 365 of the Bankruptcy Code.

**1.43** "Exit Cash" means all Cash available to the Debtor on the Effective Date, inclusive of all Cash from operations maintained in the Debtor's operating accounts, any unused funds or proceeds from any DIP Financing or from any Exit Funding as of the Effective Date.

**1.44** "Exit Funding" means any Cash and/or loans, loans commitments, or other value that may be advanced by the Exit Financier or affiliated entities upon the Effective Date.

**1.45** "Exit Funding Financier" means that Person(s) or Entity that provide the necessary Exit Funding to the Debtor, which may or may not be comprised of Affiliates and/or Insiders of the Debtor.

**1.46** "Final Order" means an Order, the implementation, operation, or effect of which has not been stayed and as to which Order (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

**1.47** "Governmental Unit" means any foreign, provincial, federal, state, local, or municipal **(A)** government, **(B)** governmental agency, **(C)** governmental commissions, **(D)** governmental department, **(E)** governmental bureau, **(F)** governmental ministry, and/or **(G)** governmental entity.

**1.48**    "Holder" means an Entity holding a Claim or Equity Interest.

**1.49**    "Impaired" means impaired within the definition of Section 1124 of the Bankruptcy Code.

**1.50**    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

**1.51**    "OCB Administrative Claims" means those Allowed Expense Claims entitled to priority under Section 507(a)(2) and 503(b)(1) that arise in the ordinary course of the operation of business and represent liabilities incurred by the Debtor after the Petition Date.

**1.52**    "Order" means an order or judgment of a court.

**1.53**    "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

**1.54**    "Petition Date" means February 15, 2019.

**1.55**    "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.56**    "Plan Documents" means any attachments, documents, exhibits and/or schedules as the same may be amended, modified, or supplemented from time to time that aid in effectuating the Plan.

**1.57**    "Priority Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

**1.58**    "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**1.59**    "Pro Rata Share" or "Pro Rata" means the same proportion or ratio that an Allowed Claim in a particular Class bears to the total amount of all Allowed Claims in such Class or Classes as provided under the Plan.

**1.60**    "Projections" means those pro forma financial projections attached as **Exhibits "D" and "E"** to the Disclosure Statement, as may be amended, modified and/or supplemented prior to or at the Confirmation Hearing.

**1.61**    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001 or 3002.

**1.62**    "Property" means "property of the estate" as set forth in Section 541 of the Bankruptcy Code.

**1.63**    "Schedules" means the Schedules, Statements, and Lists filed by the Debtor with the Bankruptcy Court in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as they may be amended, modified or supplemented from time to time.

**1.64**    "Section 503(b)(9) Claim" means any timely filed and Allowed Administrative Expense Claim for the unpaid value of any goods (but not for the value of any services) actually received by the Debtor within twenty (20) days prior to the Petition Date if sold to the Debtor in the ordinary course of business of the Debtor.

**1.65**    "Secured Claim" means any Claim that is **(A)** secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or **(B)** subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the Property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

**1.66**    "Setoff" means any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the corresponding Debtor to offset a mutual debt owing by a Debtor to a Creditor against a Claim of that Debtor, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

**1.67**    "Statutory Fees" means any fees or charges assessed against the Debtor's Estate under Section 1930, Chapter 12 of Title 28 of the United States Code.

**1.68**    "Unimpaired" means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.69**    "Unsecured Claim" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to:  **(A)** any Claim arising from the rejection of an Executory Contract or unexpired lease under Section 365 of the Bankruptcy Code, **(B)** any Deficiency Claim, or **(C)** to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.70**    "U.S. Trustee" means the United States Trustee for Region 21.

**1.71**    "U.S. Trustee Fees" means the fees required to be paid by 28 U.S.C. § 1930(a)(6)

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

The following treatment of Allowed Claims and Equity Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of such respective Claims and Equity Interests against the Debtor, the Affiliates and Dr. Okoh.

**2.1        Administrative Expense Claims**.

      **2.1.1**    In General.  This is the Class of Administrative Claims allowable under Section 503 and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including unpaid fees payable to the U.S. Trustee under 28 U.S.C. §1930, the fees of Debtors' counsel, and other Professional Fee claims.  Unless the Holder agrees to different treatment, all Administrative Claims, other than Ordinary Course Administrative Claims, will be paid by the Debtor in full, in Cash on the later of **(A)** on or as soon as practicable after the Effective Date, or **(B)** if an Administrative Claim is not Allowed as of the Effective Date than within fourteen (14) days after such Administrative Claim becomes an Allowed Administrative Claim.

      **2.1.2**    Allowed Ordinary Course Administrative Claims.    Allowed OCB Administrative Claims will be paid pursuant to the terms and conditions giving rise to such OCB Administrative Claim, without any further action by the Holders of such OCB Administrative Claims.

      **2.1.3**    Professional Compensation and Expense Reimbursement Claims.  Except as otherwise provided in this Article with respect to Ordinary Course Administrative Claims or Order of the Bankruptcy Court, all Persons seeking an award by the Bankruptcy Court of a Professional Fee Claim, or of compensation for services rendered to the Debtor or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2) of the Bankruptcy Code, shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred no later than fifteen (15) days after the entry of an order by the Bankruptcy Court conditionally approving the Debtor's Disclosure Statement, or as otherwise ordered by the Bankruptcy Court.  Such applications shall include an estimate of any additional compensation or reimbursement that is contemplated to be requested for services rendered and costs incurred through the Confirmation Date and are supplemented at the Confirmation Hearing as needed.  If such an award is approved by the Bankruptcy Court, it shall be fully paid in Cash to the extent Allowed by the Bankruptcy Court **(A)** on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or **(B)** upon such other terms as may be mutually agreed upon between such Holder of an Allowed Administrative Claim and the Debtor.  Any Provisional Fee Payments made to Professionals during the pendency of the case shall be deemed to have been made as of the Effective Date.

      All Professional Fees for services rendered in connection with this case after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date, the prosecution of Causes of Action preserved hereunder and the resolution of Disputed Claims and, shall be paid by the Debtor (or Disbursing Trustee, as applicable) upon receipt of an invoice therefore, or on such other terms as such parties may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order.  If the Debtor (or Disbursing Trustee, as applicable) and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Professional, such amount shall be determined by the Bankruptcy Court.

### 2.2   United States Trustee Fees.

All U.S. Trustee Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another Chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid by the Debtor on the Effective Date from the Debtor Plan Payment.  Any U.S. Trustee Fees owed for periods occurring after the Effective Date will be paid by the Disbursing Agent from the operation of the Debtor's business, but the Debtor shall remain liable for the payment of such fees.

### 2.3   Priority Tax Claims.

Unless the Holder agrees to different treatment, all Allowed Priority Tax Claims will be paid by the Debtor in full, in Cash on the later of **(A)** on or as soon as practicable after the Effective Date, or **(B)** if an Allowed Priority Tax Claim is not Allowed as of the Effective Date then within fifteen (15) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim.

### 2.4   Third Party Discharge and Discharge Injunction.

**THE PLAN AND THE CONFIRMATION ORDER SHALL ACT AS A DISCHARGE AND RELEASE OF THE AFFILIATES AND DR. OKOH, DEFINED BELOW (THE "<u>RELEASED THIRD PARTIES</u>") FROM ANY CLAIMS, LIABILITYS AND OBLIGATIONS ARISING IN CONNECTION WITH, IN RELATION TO OR UNDER THE DEBTOR'S PRE-PETITION BUSINESS OPERATIONS, INCLUDING, WITHOUT LIMITATION, ANY GUARANTY OF ANY OBLIGATION OR DEBT OF THE DEBTOR (THE "<u>RELEASED THIRD PARTIES CLAIM(S)</u>").  THE RELEASE AND DISCHARGE OF THE RELEASED THIRD PARTIES UNDER THIS PLAN IS IN CONSIDERATION OF AND CONDITIONED UPON EITHER (A) THE CONSENT OF THE PARTIES ASSERTING CLAIMS AGIANST THE RELEASED THIRD PARTIES TO PROVIDE A VOLUNTARY RELEASE OF SUCH LIABILITY OR (B) THE AFFILIATES CONTRIBUTION, DEFINED BELOW, AND THE OKOH SUBORDINATION, DEFINED BELOW.  WITHOUT LIMITING THE GENERALITY OF AND SUBJECT TO THE FOREGOING, ON THE EFFECTIVE DATE, THE RELEASED THIRD PARTIES SHALL BE DISCHARGED FROM THE RELEASED THIRD PARTIES CLAIMS WHETHER OR NOT (A) A PROOF OF CLAIM BASED ON SUCH RELEASED THIRD PARTIES CLAIM WAS FILED PURSUANT TO SECTION 501 OF THE BANKRUPTCY CODE, (B) A RELEASED THIRD PARTIES CLAIM IS AN ALLOWED CLAIM PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, (C) THE HOLDER OF A RELEASED THIRD PARTIES CLAIM HAS VOTED TO ACCEPT THE PLAN, OR (D) ANY LEGAL ACTION HAD BEEN COMMENCED AS OF THE CONFIRMATION DATE ON ACCOUNT OF SUCH RELEASED THIRD PARTY CLAIM AGAINST THE RELEASED THIRD PARTIES.**

**AS OF THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES, INCLUDING ALL HOLDERS OF A RELEASED THIRD PARTY CLAIM SHALL BE FOREVER PRECLUDED AND PERMANENTLY ENJOINED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW FROM ASSERTING DIRECTLY OR INDIRECTLY AGAINST THE RELEASED THIRD PARTIES, OR THEIR ASSETS OR PROPERTIES, ANY OTHER OR FURTHER CLAIMS, DEBTS, RIGHTS, CAUSES OF ACTION, REMEDIES OR LIABILITIES BASED UPON ANY ACT, OMISSION, DOCUMENT, INSTRUMENT, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT CONSTITUTES A RELEASED THIRD PARTY CLAIM AND THE CONFIRMATION ORDER SHALL CONTAIN APPROPRIATE INJUCTIVE LANGUAGE TO THAT EFFECT.  IN ACCORDANCE WITH THE FOREGOING, THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL SUCH RELEASED THIRD PARTY CLAIMS AND OTHER DEBTS AND LIABILITIES AGAINST THE RELEASED THIRD PARTIES, AND SUCH DISCHARGE SHALL VOID ANY JUDGMENT OBTAINED AGAINST THE RELEASED THIRD PARTIES, AT ANY TIME, TO THE EXTENT THAT SUCH JUDGMENT RELATES TO A RELEASED THIRD PARTY CLAIM.   THE FOREGOING RELEASE AND DISCHARGE SHALL NOT APPLY TO CLAIMS OR CAUSES OF ACTION THAT ARISE FROM OBLIGATIONS OR RIGHTS CREATED UNDER OR IN CONNECTION WITH THIS PLAN OR ANY AGREEMENT PROVIDED FOR OR CONTEMPLATED IN THIS PLAN.  THE DEBTOR INTENDS TO PUBLISH SUFFICIENT NOTICE OF THIS PROVISION TO UNNOTICED CLAIMS.**

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1129(a)(1) of the Bankruptcy Code, this Plan designates Classes of Claims.  Allowed Administrative Expense Claims and Allowed Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under the Plan, and the Holder of such Claims are not required to vote on this Plan.

### 3.1      Class 1 – Unsecured Priority Wage Claims.

Class 1 consists of all Allowed Unsecured Priority Wage Claims against the Debtor which are entitled to priority pursuant to Sections 507(a)(4) of the Bankruptcy Code.  Class 1 is Unimpaired.

### 3.2       Class 2 – Secured Claim of JPMorgan Chase Bank, N.A.

Class 2 consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("Chase"), which is secured by the Debtor's personal property.  Class 2 is Impaired.

### 3.3       Class 3 – Administrative Convenience Class.[1]

Class 3 consists of all Allowed Unsecured Claims that are in an amount of $1,000.00 or less; estimated to be $1,000.00 or less; or agree to reduce their Claim to $1,000.00.  Class 3 is Impaired.

### 3.4       Class 4 – Critical Vendors.[1]

Class 4 consists of all Allowed Unsecured Claims of creditors and vendors who, in the Debtor's business judgment, are critical and necessary to the Debtor's collection efforts.  Class 4 is Impaired.

### 3.5       Class 5 – Unsecured Wage Claims.[1]

Class 5 consists of all Allowed Unsecured Wage Claims.  The Debtor's principal Dr. James Okoh ("Dr. Okoh") holds an Allowed Unsecured Wage Claim of $463,650.00 (the "Okoh Wage Claim").   Dr. Okoh has agreed to subordinate the Okoh Wage Claim (the "Okoh Subordination") for the first $50,000.00 to Class 6; and, thereafter at a pro rata distribution rate of 50.00% with the remaining Allowed Unsecured Wage Claims (the "Remaining Unsecured Wage Claims").  Class 5 is Impaired.

### 3.6       Class 6 – General Unsecured Claims.[1]

Class 6 consists of all Allowed Unsecured Claims not otherwise classified under the Plan. Class 6 is Impaired.

### 3.7       Class 7 – Equity Interests.

Class 7 consists of all existing Equity Interests in the Debtor.  Class 7 is Impaired.

## ARTICLE 4
## TREATMENT OF ALLOWED CLAIMS AND INTERESTS

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Unsecured Priority Wage Claims ($112,415.38) | Unimpaired | Unsecured Priority Wage Claims are Claims of individuals or corporations earned within 180 days before the Petition Date for wages, salaries, or commissions pursuant to Section 507(a)(4) of the Bankruptcy Code.  **[CONTINUED NEXT PAGE]** |

---

[1] See **Exhibit "A"** for a delineation of Classes 3 through 6.  In preparing **Exhibit "A"**, and all other exhibits, the Debtor neither acknowledges or consents to the amount or validity of any creditor's Claim; and, expressly reserves the right to later contest the same.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 –[2][3]<br>Continued | | Allowed Unsecured Priority Wage Claims will be paid in full, in Cash, the later of: **(a)** the Effective Date; **(b)** the date of the Order allowing such Claim; or **(c)** the date that such Allowed Unsecured Priority Wage Claim would have been due if the Bankruptcy Case had not been commenced. However, the Plan contemplates that the Debtor may, at its option, and in lieu of a lump sum Cash payment of an Allowed Unsecured Priority Wage Claim, make regular installment payments of Cash having a total value as of the Effective Date, equal to the Allowed Amount of such Unsecured Priority Wage Claim over a period ending not later than five (5) months after the Confirmation and in a manner not less favorable than the most favored non-priority.  By providing this treatment, it is the Debtor's intent to fully comply with the requirements for Confirmation set forth in 1129(a)(9)(C).<br><br>Unsecured Priority Wage Claims are not classified, are to be treated as required by the Bankruptcy Code, and the Holders of such Claims are not entitled to vote on the Plan. |
| Class 2 –<br>Secured Claims of<br>JPMorgan Chase Bank,<br>N.A.<br><br>($1,294,725.36) | Impaired | Class 2 consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("Chase").<br><br>The Debtor, through the Disbursing Agent, shall continue to collect its accounts receivables (the "Collection").  The Collection shall first be used to pay all Administrative Expense Claims, Unsecured Priority Wage Claims, and the Debtor's continued operating expenses pursuant to the Cash Flow Projection attached hereto subject to cash collateral orders[4]  (collectively, the "Operating Costs").  The Collection less the Operating Costs shall be the "Remainder".<br><br>Class 2 shall receive the proceeds from the Remainder until paid in full.  Class 2 is Impaired under the Plan and the Holder of a Class 2 Claim is entitled to vote to accept or reject the Plan. |
| Class 3 –<br>Administrative<br>Convenience Class[1]<br><br>($5,400.95) | Impaired | Class 3 consists of the Allowed Unsecured Claims that are in an amount of $1,000.00 or less; or, estimated to be $1,000.00 or less.<br><br>Once Class 2's pre-petition indebtedness is extinguished, Class 3 shall receive the proceeds from the Remainder until paid at a cumulative amount of $4,860.86 of the Allowed Claims.<br><br>Class 3 is Impaired under the Plan and the Holder of a Class 3 Claim is entitled to vote to accept or reject the Plan. |

---

[2] See **Exhibit "B"** for a breakout of all wage claims.
[3] Pursuant to 11 U.S.C. § 104(c), the adjustment in monetary amount contained in 11 U.S.C. § 507(a)(4) shall not apply to this Bankruptcy Case since it was commenced before the date of the adjustment April 1, 2019.
[4] The Debtor may file supplemental budgets or cash flow projections should its operating costs materially alter.

| Class | Impairment | Treatment |
|---|---|---|
| Class 4 – Critical Vendors[15] ($45,303.27) | Impaired | Class 4 consists of the Allowed Unsecured Claims of creditors and vendors who, in the Debtor's business judgment, are critical and necessary to the Debtor's collection efforts (the "Critical Vendors").<br><br>The Debtor shall continue to pay the Critical Vendors pursuant to the two critical vendor orders (Docs. 64 and 84) (the "Critical Vendor Orders"). Once Class 3's pre-petition indebtedness is extinguished, Class 4 shall receive the proceeds from the Remainder until paid in full. Furthermore, litigation proceeds from prosecuting Former Officer Claims shall be used to pay Allowed Class 4 Claims should the Debtor prosecute.<br><br>Class 4 is Impaired under the Plan and the Holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. |
| Class 5 – Unsecured Wage Claims[16] ($953,738.57) | Impaired | Class 5 consists of the Allowed Unsecured Wage Claims of which Dr. Okoh holds the Okoh Wage Claim.<br><br>Dr. Okoh has agreed to the Okoh Subordination for the first $50,000.00 to Class 6; and, thereafter at a pro rata distribution rate of 50.00% with the Remaining Unsecured Wage Claims. Once Class 4's pre-petition indebtedness is extinguished, the Allowed Unsecured Wage Claims shall receive the proceeds from the Remainder until paid in full. Furthermore, litigation proceeds from prosecuting Former Officer Claims shall be used to pay Allowed Class 5 Claims after Class 4 has been paid in full should the Debtor prosecute.<br><br>Class 5 is Impaired under the Plan and the Holder of a Class 5 Claim is entitled to vote to accept or reject the Plan. |
| Class 6 – General Unsecured Claims[1] ($3,267,744.06) | Impaired | Class 6 consists of the Allowed Unsecured Claims not otherwise classified under the Plan.<br><br>Class 6 shall receive the first $50,000.00 to be paid towards the Okoh Wage Claim. And, once Class 5's pre-petition indebtedness is extinguished, Class 6 shall receive the proceeds from the Remainder until paid in full. Furthermore, litigation proceeds from prosecuting Former Officer Claims shall be used to pay Allowed Class 6 Claims after Class 5 has been paid in full should the Debtor prosecute. Class 6 is Impaired under the Plan and the Holder of a Class 6 Claim is entitled to vote to accept or reject the Plan. |

[5] Pursuant to the two approved Critical Vendor Orders, the Debtor anticipates Change and Data Media will receive $500.00 a month each against their pre-petition balance for $3,500.00 each or $7,000.00 total to be credited against the Class 4 total. And, the Debtor anticipates Technology Partners will receive the full $18,084.50 against its pre-petition balance. Change, Data Media and Technology Partners are defined below in **Exhibit "A"**.

[6] Under 42 C.F.R. Part 415 and the employment agreements, the Debtor may be responsible for an accounting for the compensation furnished to its physicians in return for those physician services in order to continue receiving Medicare reimbursements. Therefore, the Debtor has separately classified the Unsecured Wage Claims from the General Unsecured Claims.

| Class | Impairment | Treatment |
|---|---|---|
| Class 7 – Equity Interests | Impaired | Class 7 consists of ownership interests currently issued or authorized in the Debtor. The Equity Holders shall retain their interest(s) in the Debtor to the same extent held prior to the Petition Date in order for the Debtor and its Affiliates to maintain their medical credentials only; and, the Equity Holders shall enjoy no other privileges or rights as to the equity interests. Class 7 is Impaired under the Plan and the Holder of a Class 7 Claim is entitled to vote to accept or reject the Plan. |

## ARTICLE 5
## MEANS FOR EXECUTION OF PLAN

**5.1     Plan Funding**.

The Debtor will fund payments to be made under the Plan through the following: **(A)** Cash on hand on the Effective Date; **(B)** Cash generated and/or collected by the Debtor in the ordinary course of business on and after the Effective Date; **(C)** Cash generated by the substantive consolidation of the Affiliates, and by extension their assets, with the Debtor (the "Affiliate Contribution"); and **(D)** litigation proceeds from prosecuting Causes of Action including claims against the Debtor's former Chief Executive Officer Patrick Santore and former Chief Financial Officer David Whinter (the "Former Officer Claims").

**5.2     Funding of Operations**.

The Debtor's operations will be funded by Cash generated from operations.

**5.3     Continued Corporate Existence.**

The Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a corporation under applicable law in the jurisdiction(s) in which the Debtor is organized or otherwise formed and pursuant to its articles of incorporation, articles of organization, bylaws, operating agreements or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles or amended operating agreements.

**5.4     Disbursing Agent.**

The Disbursing Agent shall be John Patrick of Tampa Bay Business Consultants.

**5.4.1**   <u>Term</u>.  The Disbursing Agent shall serve for a term terminating on the earlier to occur of **(A)** all Assets of the Debtor and its Affiliates have been distributed pursuant to this Plan, **(B)** the Disbursing Agent determines, in his sole discretion, that the administration of any remaining Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, or **(C)** upon removal by order of the Bankruptcy Court after due notice and a hearing due to breach of fiduciary duty, death, disability, fraud, recklessness or willful misconduct.  Upon expiration of the term the Disbursing Agent shall file a final accounting of the Distributions.

**5.4.2**   <u>Duties, Functions and Responsibilities</u>.  The Disbursing Agent shall **(A)** administer, liquidate and monetize the Assets; **(B)** object to and resolve Claims and Disputed Claims; **(C)** investigate, litigate, settle or abandon any Causes of Action including but not limited to the Former Officer Claims; **(D)** make Distributions in accordance with the terms of the Plan; **(E)** prepare and file post-Effective Date operating reports; **(F)** file appropriate tax returns in the exercise of his fiduciary obligations; and, **(G)** take such actions as are otherwise necessary and reasonable to carry out the purposes of the Plan.   To the extent necessary or appropriate, the Disbursing Agent shall be deemed to be the Chief Executive Officer and responsible party for the Debtor and its Affiliates as the party-in-interest in the Bankruptcy Case, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with Section 1123(b)(3)(B) of the Bankruptcy Code.

**5.4.3**   <u>Professionals</u>.    The Disbursing Agent may continue to retain any professionals the Debtor has previously retained – the Debtor has previously retained the Jennis Law Firm as counsel and Andrea P. Bauman, CPA PA as accountant.   The Disbursing Agent may retain any additional professionals as he deems are necessary and appropriate in furtherance of his fiduciary obligations.

**5.4.4**   <u>Compensation</u>.  The Disbursing Agent shall receive Ten Thousand Dollars ($10,000.00) for the months of May and June of 2019; and, thereafter the Disbursing Agent shall receive Fifteen Thousand Dollars ($15,000.00) per month until his term is extinguished (the "<u>Disbursing Agent Fees</u>").  The Disbursing Agent Fees shall be granted administrative priority; and, are to be included as a line item on the agreed upon budget as an Operating Cost.  In addition, any costs the Disbursing Agent incurs in performing his duty shall be reimbursed as an administrative priority included in the budget as an Operating Cost.

**5.4.5**   <u>Bonding, Indemnification and Liabilities</u>.  The Disbursing Agent shall not be obligated to obtain a bond but may do so, in his sole discretion, in which case the expense incurred by such bonding shall be paid as an Operating Cost.  The Disbursing Agent shall act in a fiduciary capacity on behalf of the interests of the Holders of Allowed Claims.  The Disbursing Agent, however, shall not be liable for an act or omission, other than willful misconduct, gross negligence or fraud.  The Disbursing Agent in his sole and absolute discretion may consult with his attorneys, accountants, financial advisors, agents and other professionals.

5.5      **Corporate Action**.

All matters provided for under the Plan and/or the Plan Documents involving the organizational structure of the Debtor or action to be taken by, or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any such entities.

5.6      **Estimates and Payments of Claims and Interests**.

The Debtor reserves the right to request an estimation of a Claim for purposes of distribution, voting or otherwise pursuant to Section 502(c) of the Bankruptcy Code at any time prior to or on the Effective Date.   Except where the Plan contemplates deferred payment, delivery of securities, or some other form of Distributions of Property to be made by the Debtor pursuant to the Plan, payments shall be made in Cash, by check, or by wire transfer.

5.7      **Addresses for Distributions to Holders of Allowed Claims**.

Unless otherwise provided in the Plan, the Plan Documents, or a Final Order of the Bankruptcy Court, Distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: **(A)** the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or **(B)** if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  Neither the Debtor nor the Debtor shall be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

5.8      **Disputed Claims**.

5.8.1   <u>Objection Deadline</u>.  As soon as practicable, but in no event later than sixty (60) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Northern District of Florida.

5.8.2   <u>Prosecution of Objections</u>.  On and after the Effective Date, the Debtor shall have the authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims.  On and after the Effective Date, the Debtor shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

5.8.3   <u>Establishment and Maintenance of Reserve for Disputed Claims</u>**.**  The Debtor shall maintain the Disputed Claims Reserve it reasonably believes is equivalent to the aggregate of any distributable amounts of Cash to which Holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or in such amount as may be estimated by the Bankruptcy Court.

The Debtor may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix or liquidate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed Amounts of such Claims for purposes of establishing the appropriate reserves or Distributions under this Plan.  In lieu of estimating, fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the respective Debtor and the Holder of a Disputed Claim.

       **5.8.4**   <u>Distributions Upon Allowance of Disputed Claims</u>.  The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made, without interest, in accordance with this Plan to the fullest extent possible solely from the Disputed Claims Reserve based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No Holder of a Disputed Claim shall have any Claim against the Disputed Claims Reserve or the Debtor with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no Holder of a Disputed Claim shall have any right to Distribution on such Disputed Claim except as provided in this Section.

       **5.8.5**   <u>Withholding of Taxes</u>.  The Debtor shall withhold from any Property distributed under the Plan any Property which must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Person entitled to such Property to the extent required by applicable law.

**5.9**      **Unclaimed Property**.

Any Cash or other Property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto (including any non-negotiated checks) as of the later of **(A)** one (1) year after the Confirmation Date or **(B)** one hundred twenty (120) days after the Distributions shall become vested in the Debtor to be applied toward the funding of the Plan.  In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim.

**5.10     Exoneration and Reliance**.

The Debtor shall be liable to any Holder of a Claim or Equity Interest or other party with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: **(A)** the management or operation of the Debtor; **(B)** the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or **(C)** the administration of the Plan or Property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence.  The Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, respectively, and such reliance shall conclusively establish good faith and the absence of willful misconduct.  In any action, suit, or proceeding by any Holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party.

**5.11     Effectuating Documents and Further Transactions**.

The executive officers of the Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Other parties shall be required to likewise take such actions and execute such documents as are needed to effectuate this Plan under Section 1142 of the Bankruptcy Code.

## ARTICLE 6
## EFFECTS OF PLAN CONFIRMATION

**6.1     No Liability for Tax Claims**.

Unless a taxing authority has asserted a Claim against any Debtor before the bar date or as Allowed under the Bankruptcy Code, no Claim or right to setoff of such authority shall be Allowed against the Debtor for taxes, penalties, and/or interest arising out of the failure, if any, of any Debtor to have fully paid such taxes or to have filed any tax return, including, but not limited to, any income tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

**6.2     Vesting**.

Except as otherwise expressly provided in the Plan, on the Effective Date, the Debtor shall be vested with all of the Assets and Property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or Equity Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

**6.3**    **Retention and Enforcement of Claims or Interests**.

Any rights or Retained Causes of Action or objection to any Claim under any theory of law, including, without limitation, under the Bankruptcy Code, accruing to any Debtor shall remain property of the Debtor pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Confirmation of this Plan and entry of the Confirmation Order shall not **(A)** constitute an adjudication of any Retained Causes of Action or claim the Debtor may have against any parties, whether known or unknown, asserted or unasserted, contingent or unliquidated, or of the validity of any Claim against any Debtor regardless of whether such party accepts or rejects this Plan or has filed a Proof of Claim in any Bankruptcy Case; **(B)** act as *res judicata* or collateral estoppel with respect to any Retained Causes of Action or other claims of the Debtor; **(C)** otherwise have any preclusive effect with respect to a claim or Retained Cause of Action that any Debtor have or may have prior to the Effective Date.  In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Debtor shall retain all Retained Causes of Action available to the Debtor and/or its Estate, and to the fullest extent allowable under applicable law.  After Confirmation, the Debtor, and in its sole discretion, shall be entitled to pursue, compromise, or abandon any and all of the Retained Causes of Action.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1**    **Assumed Executory Contracts and Unexpired Leases.**

The Debtor will be deemed to have assumed all executory contracts and/or unexpired leases as of the Effective Date not expressly rejected by order of the Bankruptcy or this Article. Unless any counter-party to an executory contract and/or unexpired lease files an objection to such assumption at least seven (7) days prior to the first date set to consider Confirmation of the Plan, such executory contract shall be deemed to not be in default and may be assumed without cure or adequate assurance of cure.  A Proof of Claim arising from the rejection of an executory contract or unexpired lease must be filed no later than thirty (30) days after the earlier of **(A)** the date of the entry of the order by the Bankruptcy Court authorizing the rejection of such executory contract or unexpired lease; or **(B)** the Confirmation Date.  Promise Hospital of Dade, Inc. d/b/a Promise Hospital of Miami has indicated it desires to terminate the *Professional Services Agreement* under the sixty (60) days' notice clause to which the Debtor reserves all equitable and legal rights and remedies it may have.  The Debtor may reject the May 11, 2017 *Third Party Collection Services Agreement* with Gulf Coast Collection Bureau, Inc.

## ARTICLE 8
## EFFECTUATION AND SUPERVISION OF THE PLAN

**8.1**    **Jurisdiction.**

Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order.

Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of Debtor.

Nothing contained herein shall prevent the Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

**8.2    General Retention**.

Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the rights of the Debtor to object to or re-examine such Claim, in whole or in part.

**8.3    Specific Purposes**.

**8.3.1    Modification**.  To modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

**8.3.2    Corrections**.  To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents, and such other documents may be substantially realized thereby;

**8.3.3    Performance**.  To assure the performance by the Debtor of their obligations to make Distributions under the Plan and the Plan Documents;

**8.3.4    Enforcement**.  To enforce and interpret the terms and conditions of the Plan and the Plan Documents;

**8.3.5    Orders**.  To enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights, and powers of the Debtor;

**8.3.6    Interpretation**.  To enforce and interpret the terms and conditions of the Plan Documents;

**8.3.7    Taxes**.  To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor or their Estate arising prior to the Effective Date or relating to the period of administration of the Bankruptcy Case;

**8.3.8**    <u>Compensation</u>.  To hear and determine all applications of compensation of professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code;

**8.3.9**    <u>Causes of Action</u>.  To hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives, and/or agents;

**8.3.10**  <u>Executory Contracts</u>.  To determine any and all motions pending on Confirmation for the rejection, assumption, or assignment of Executory Contracts or unexpired leases and the allowance of any Claim resulting therefrom;

**8.3.11**  <u>Confirmation Order</u>.  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**8.3.12**  <u>Compromises</u>.  To consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or their Estate;

**8.3.13**  <u>Title</u>.  To determine all questions and disputes regarding title to the assets of the Debtor or their Estate;

**8.3.14**  <u>Necessary Orders</u>.  To enter such Orders as are necessary to implement and enforce any other Orders entered in the Bankruptcy Case; and

**8.3.15**  <u>Other Matters</u>.  To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

### ARTICLE 9
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

**9.1**    **Conditions to Confirmation**.

Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor.  These Confirmation conditions are as follows:

**9.1.1**    <u>Disclosure Statement</u>.  The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

**9.1.2**    <u>Confirmation Order</u>.  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtor.

**9.2    Conditions to Effectiveness**.

The Effective Date shall occur on that day which is the first Business Day that is at least fifteen (15) days after the date of entry of the Confirmation Order.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor:

        **9.2.1**    Final Confirmation Order.  The Confirmation Order (and such related Orders) shall have become a Final Order.

        **9.2.2**    Plan Documents.  The Plan Documents, specifically including any applicable corporate documents that are necessary or appropriate to implement and effectuate this Plan shall have been prepared, executed, delivered and, where applicable, filed with the appropriate Governmental Units.

**9.3    Waiver**.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtor.

**ARTICLE 10**
**ACCEPTANCE OR REJECTION OF PLAN**

**10.1    Each Impaired Class Entitled to Vote Separately**.

Each Impaired Class of Claims or Equity Interests receiving a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan.  The Holders of Allowed Claims in the following Classes are entitled to vote:  Classes 2 through 7.

**10.2    Class Acceptance Requirement**.

Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**10.3    Cramdown**.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.

**ARTICLE 11**
**MISCELLANEOUS PROVISIONS**

**11.1    Revocation of Plan**.

The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

**11.2    Headings**.

Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**11.3    Due Authorization by Holders of Claims**.

Each and every Holder of a Claim who elects to participate in the Distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtor, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

**11.4    Time**.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**11.5    Transactions on Business Days**.

If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

**11.6    Payment on Distribution Dates**.

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall, instead, be made, without interest, on the next Business Day thereafter.

**11.7    Fractional Dollars**.

Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding up in the case of $0.50 or more and rounding down in the case of less than $0.50).

**11.8    Unclaimed or De Minimis Distributions**.

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan.  De minimus Distributions of Cash or Property having a value of less than five dollars ($5.00) shall not be made.

If a Distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, as to such Distribution, within ninety (90) days of the return of such Distribution the amount of Cash attributable to such Distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such Distribution and will not participate in any further Distributions under the Plan.

**11.9    Modification of Payment Terms**.

The Debtor reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

**11.10    Entire Agreement**.

The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.  No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**11.11  Confirmation Order**.

In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

**11.12  Further Authorizations**.

The Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions, and/or rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

**11.13  Exemption from Securities Laws**.

The equity interests to be issued in connection with this Plan, if any, will be issued pursuant to the exemption from the registration requirements of the Securities Act of 1933 (and of equivalent state securities or "blue sky" laws) to the fullest extent permissible as provided by Section 1145(a) of the Bankruptcy Code.

**11.14  Transfer Taxes**.

The transfer of any Property pursuant to the Plan or the Plan Documents, or the making or delivery of an instrument of transfer under the Plan or the Plan Documents, shall not (and the Confirmation Order shall so provide), to the fullest extent permissible under Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, and/or other similar tax.

**11.15  Recordable Order**.

The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

**11.16  Governing Law**.

Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**11.17   Severability**.

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively.   Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**11.18   No Interest**.

Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date is to be Allowed on any Claim.

**11.19   No Attorneys' Fees**.

No attorneys' fees or costs shall be Allowed or paid with respect to any Claim except may be specifically Allowed under Section 506(b) of the Bankruptcy Code and by a Final Order of the Bankruptcy Court.

**11.20   Consent to Jurisdiction**.

Upon default under the Plan, the Debtor consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agrees that it shall be the preferred forum for all proceedings relating to such default.

**11.21   Setoffs**.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

**11.22   Successors and Assigns**.

The rights, duties, and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

**11.23   Reservation.**

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Bankruptcy Case shall be reserved in full. Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Case shall be bound or deemed prejudiced by any such concession.

**ARTICLE 12**
**MODIFICATION OF PLAN**

**12.1   Modification of Plan.**

The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the Holders of Allowed Claims are not materially and adversely affected.

**12.2   Notices.**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:

National Radiology Consultants, P.A.
401 E. Fern Street
Tampa, Florida 33604

With mandatory copies to:

Jennis Law Firm
606 East Madison Street
Tampa, Florida 33602

Dated: Lutz, Florida
May 30, 2019


NATIONAL RADIOLOGY CONSULTANTS, P.A.

By: /s/ James Okoh, M.D.
James Okoh, M.D., Chief Executive Officer

EXHIBIT "A"

DELINEATION OF CLASSES 3 THROUGH 6

### Class 3 – Administrative Convenience Class

| Number | Schedule | Creditor | Amount of Claim |
|--------|----------|----------|-----------------|
| 1 | 3.4 | Aqua Chill | $37.45 |
| 2 | 3.5 | Bayshore Solutions | $89.00 |
| 3 | 3.11 | Cintas | $579.76 |
| 4 | 3.14 | Corporation Service Company | $302.99 |
| 5 | 3.16 | Duke Energy Headquarters | $261.56 |
| 6 | 3.17 | Duke Energy Headquarters | $216.49 |
| 7 | 3.18 | EEI Security, Inc. | $70.46 |
| 8 | 3.21 | Frontier | $992.40 |
| 9 | 3.22 | Greenlee Law, PLLC | $0.00 |
| 10 | 3.24 | Hillsborough County Medical | $370.00 |
| 11 | 2.7 Claim 3-2 | Internal Revenue Service | $500.00 |
| 12 | 3.30 | NICA | $783.16 |
| 13 | 3.38 | Shred-it | $433.26 |
| 14 | 3.41 | Spectrum Business | $405.63 |
| 15 | 3.42 | Spectrum Business | $254.28 |
| 16 | 3.46 | Vanguard Cleaning Systems | $321.00 |

### Class 4 – Critical Vendors

| Number | Schedule | Creditor | Amount of Claim |
|--------|----------|----------|-----------------|
| 1 | 3.10 Claim 14 | Change Healthcare ("Change") | $14,162.79[13] |
| 2 | 3.15 | Data Media Associates, LLC ("Data Media") | $0.00[13] |
| 3 | N/A | Dexios | $0.00 |
| 4 | 3.36 | RamSoft | $13,055.98 |
| 5 | 3.45 Claim 9 | Technology Partners, Inc.[7] | $18,084.50[8] |

### Class 5 – Unsecured Wage Claims

| Number | Schedule | Creditor | Amount of Claim |
|--------|----------|----------|-----------------|
| 1 | 2.1 | Adam Green, M.D. | $0.00 |
| 2 | 2.2 | Adel Abdalla, M.D. | $18,400.00 |
| 3 | 2.3 Claim 15 | Alex Bibbey, M.D. | $305,184.75 |
| 4 | 2.4 | Fan Yun Gan, M.D. | $33,303.86 |
| 5 | 2.5 | Harvey Esrov, M.D. | $2,419.20 |
| 6 | 2.6 | Hugo Montes, M.D. | $2,534.62 |
| 7 | 2.8 | James Okoh, M.D. | $463,650.00 |
| 8 | 2.9 | Michael Herron, M.D. | $2,534.62 |
| 9 | 2.10 Claim 16 | Satish Venkataperumal, M.D. | $125,711.52 |

---

[7] "Technology Partners", also sometimes referred to as "Imagine".

[8] The amount of claims reflect one-time payments of $12,595.02 to Change, $9,953.41 to Data Media and $14,569.55 to Technology Partners as approved and authorized by the two Critical Vendor Orders.

**Class 6 – General Unsecured Claims**

| Number | Schedule | Creditor | Amount of Claim |
|---|---|---|---|
| 1 | 3.1 | 3M Health Information System | $15,233.94 |
| 2 | Claim 17 | Aetna, Inc. | $1,046.04 |
| 3 | 3.2 | All Covered | $13,955.23 |
| 4 | 3.3 Claim 5 | American Express Company | $38,249.01 |
| 5 | 3.6 | Blue Cross Blue Shield of Florida, Inc. | $13,550.35 |
| 6 | 3.7 Claim 10 | BMW Card Services | $3,619.90 |
| 7 | 3.8 | CBIZ, Inc. | $22,719.72 |
| 8 | 3.9 Claim 6 | CenturyLink | $12,376.92 |
| 9 | 3.12 | Citi Business Card | $8,125.73 |
| 10 | 3.13 Claim 4 | Cliftonlarsonallen Wealth | $11,076.71 |
| 11 | 3.19 | Emergence | $10,000.00 |
| 12 | 3.20 | Florida Retirement Consultant | $46,000.00 |
| 13 | 3.23 | Hartford Life Insurance | $5,380.00 |
| 14 | 3.25 | HSW & Associates, Inc. | $2,472.77 |
| 15 | 3.26 | JPMorgan Chase | $9,450.10 |
| 16 | 3.27 | Lincoln National Life Ins. | $3,665.00 |
| 17 | 3.28 Claim 2 | LocumTenens.com | $441,620.24 |
| 18 | 3.29 Claim 7 | Medicus | $790,948.22 |
| 19 | 3.31 Claim 19 | Nuance Communications, Inc. | $371,519.83 |
| 20 | 3.32 | Pasco County Tax Collector | $2,500.00 |
| 21 | 3.33 | Principal Disability Health | $9,910.98 |
| 22 | 3.34 Claim 11 | Radar Healthcare Providers | $172,579.00 |
| 23 | 3.35 | Radiation Services | $1,200.00 |
| 24 | 3.37 | Salesforce.com, Inc. | $3,600.00 |
| 25 | 3.39 | Shumaker Loop & Kendrick, LLP | $3,534.00 |
| 26 | 3.40 | Shutts & Bowen, LLP | $3,505.47 |
| 27 | 3.43 Claim 12 | Staff Care, Inc. | $290,124.61 |
| 28 | 3.44 | Sulloway & Hollis, PLLC | $12,265.20 |
| 29 | Claim 1 | UnitedHealthcare Insurance Company | $3,908.89 |
| 30 | 3.47 Claim 13 | vRad | $837,180.93 |
| 31 | 3.48 | Wells Fargo Bank, N.A. | $6,745.29 |
| 32 | 3.49 Claim 8 | Wells Fargo Bank, N.A. | $11,491.12 |
| 33 | 3.50 | Wells Fargo Bank, N.A. | $10,940.99 |
| 34 | 3.51 | Wells Fargo Bank, N.A. | $27,609.05 |
| 35 | 3.52 Claim 20 | Zayo Group, LLC | $49,638.82 |

**EXHIBIT "B"**

**DELINEATION OF WAGE CLAIMS**

| Number | Schedule | Creditor | Class 1 507(a)(4) | Class 5 Unsecured | Total Claim |
|---|---|---|---|---|---|
| 1 | 2.1 | Adam Green, M.D. | $9,615.38 | $0.00 | **$9,615.38** |
| 2 | 2.2 | Adel Abdalla, M.D. | $12,850.00 | $18,400.00 | **$31,250.00** |
| 3 | 2.3 Claim 15 | Alex Bibbey, M.D. | $12,850.00 | $305,184.75 | **$318,034.75** |
| 4 | 2.4 | Fan Yun Gan, M.D. | $12,850.00 | $33,303.86 | **$46,153.86** |
| 5 | 2.5 | Harvey Esrov, M.D. | $12,850.00 | $2,419.20 | **$15,269.20** |
| 6 | 2.6 | Hugo Montes, M.D. | $12,850.00 | $2,534.62 | **$15,384.62** |
| 7 | 2.8 | James Okoh, M.D. | $12,850.00 | $463,650.00 | **$476,500.00** |
| 8 | 2.9 | Michael Herron, M.D. | $12,850.00 | $2,534.62 | **$15,384.62** |
| 9 | 2.10 Claim 16 | Satish Venkataperumal, M.D. | $12,850.00 | $125,711.52 | **$138,561.52** |
| **Totals** | **9 Claims** | **9 Claims** | **$112,415.38** | **$953,738.57** | **$1,066,153.95** |