IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

In the Matter of:                                        CASE No.: 8:19-bk-01274
                                                         Chapter 11
NATIONAL RADIOLOGY CONSULTANTS, P.A.,

      Debtor.
_____/

CREDITOR, VRAD'S MOTION TO
CONVERT OR DISMISS THIS CASE AND APPOINT A TRUSTEE

**COMES NOW** Creditor, VIRTUAL RADIOLOGIC PROFESSIONALS OF ILLINOIS, S.C., INC., (hereinafter referred to as "VRAD") and hereby files their Motion to Convert or Dismiss this case and appoint a Trustee and hereby further advises the Court, the Debtor, the US Trustee and all other interested parties as to the following:

1. This Court is intimately aware that pursuant to 11 U.S.C.A. § 1112 (b)(1) a party in interest can request and move to convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

2. Furthermore, 11 U.S.C.A. § 1104, entitled, "Appointment of trustee or examiner" provides:

"(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."

3. Without having the benefit of the transcript of the last hearing which took place on July 11, 2019, during the course of the arguments advanced in these proceedings the Debtor acknowledged the Plan it has proposed is one for *__liquidation__* of the Debtor and not for reorganization and the Court itself questioned why it might not be better to appoint a Chapter 7 Trustee.

4. These remarks came in the context of reviewing the Debtor's blanket objections to the production of their own business records including the closing statement and associated documents with the loans from lender, J.P. Morgan Chase Bank and among other records, evidence pertaining to the funding of Dr. Okoh's 401K Plan and the claim he did not receive a loan from the Debtor of $265,934.90, as shown on the Debtor's own "Balance Sheet" that was not repaid, but rather this is a mistake and the claim now is he invested these funds into the Debtor.

5. In denying the Debtor's objections and ordering the documents to be produced the Court commented that if the closing statement and associated documents showed that when the loan was made, someone went to Bern's Steak House to celebrate that would not be a legitimate business deduction.

6. Your Honor then went on to caution and remind Debtor's counsel their only client in this case, is the debtor company, National Radiology Consultants, P.A. and that while Dr. James Okoh, is its sole, 100% shareholder, they do not represent him or his interests.

7. Following the hearing Debtor's counsel filed their Amended Plan and Amended Disclosure Statement which still includes the all-encompassing release and injunctive language

in favor of Dr. Okoh, barring the bringing of any and all actions against Dr. Okoh for anything regarding his past management and operation of the Debtor company he controls 100%.

8. The context behind whether there was a loan to Dr. Okoh for $265,934.90, which has not been repaid, or if he is due an offset credit for monies invested from his 401K Plan came about upon an examination of the Debtor's Statement of Financial Affairs DE#100, filed on May 31, 2019. In this filing in response to Question 4, Dr.Okoh disclosed that in the year preceding the filing of this case while he took wages totaling $105,384.62, he also took, as an insider withdrawals totaling $230,500.00, as reflected on the attached Composite Exhibit 1.

9. Neither the Debtor's original Plan or the Amended Plan contain any provision whereby Dr. Okoh is to repay these withdrawals he took as an insider.

10. However, what has now been revealed by the Debtor's Supplemental Production of its January, 2019, bank statement from Wells Fargo Bank, a copy of which is attached hereto as Composite Exhibit 2, is that Dr. Okoh and the Debtor's counsel, when they filed their Statement of Financial Affairs, DE#100, did not list any of the "insider withdrawals" which Dr. Okoh took in *2019*, which total an additional *$30,000.00*, taken in the month preceding the filing of this case. [*$3,000* on January 3, 2019; *$2,000* on January 4, 2019; *$10,000* on January 8, 2019; *$1,000* on January 15, 2019; *$1,000* on January 15, 2019; *$3,000* on January 28, 2019 and *$10,000* on January 29, 2019.]

11. Just as interesting is the disclosure in the January, 2019, bank statement of the payment being made from the Debtor's account to "Stubhub" for $1,907.05, on January 14, 2019. As it turns out this is only the proverbial tip of the iceberg concerning personal expenditures and knowingly fraudulent and illegal transfers orchestrated and controlled by Dr. Okoh as the 100% shareholder of the Debtor for his own personal benefit and the benefit of other

presumed family members and obviously to the detriment of all creditors. One must remember of course that as it stands now with the Debtor's Amended Plan there are ZERO DOLLARS, [not even $1,907.05] being offered to the nearly $4 million dollars owed to unsecured creditors.

12. Attached hereto and made a part hereof as a completely separate document because of its size, is <u>Composite Exhibit 3</u>, which is the PDF document of supplemental records produced by the Debtor which they named: "NRC Request #5 and #9 - Financial Docs (Bates NRC 002908-003222) (00326207-2xE37B3)"

13. This Exhibit supposedly contains the Debtor's responsive documents to VRAD's Production Requests number 5 and 9, which the Court had to order the Debtor to produce which request:

"5. All financial and business accounting records of any kind, whether prepared in Quickbooks, or other similar format/software program, etc., which the Debtor used to prepare their tax returns, any financial records, accounting balance sheet and profit and loss statements filed with the Court and specifically including any and all monthly ledger or business accounts reconciliation reports of the debtor's bank accounts that describe in detail all financial transactions for the four (4) year period, up to and including the Petition Date."

"9. Copies of the Debtor's most recent 2018 year to date income statements, profit and loss statements, balance sheets, and inventory and equipment lists."

14. The document production is deficient as the Debtor has not produced "any and all monthly ledger or business accounts reconciliation reports of the debtor's bank accounts." The Exhibit is a searchable PDF and thereby after using the "<u>Control F</u>" function a search bar will appear in the top right corner of the PDF window allowing the user to search throughout the exhibit.

15. So by first example when you search "<u>Stubhub</u>" all of the following entries appear each representing a withdrawal and/or payment from the Debtor to "<u>Stubhub</u>" as follows:

05/04/2015 Check STUBHUB, INC R -    $1,284.80

06/04/2015 Check STUBHUB, INC R -        $1,030.00

06/15/2015 Check STUBHUB, INC R -        $2,099.96

08/10/2015 Check STUBHUB, INC R -        $606.00

08/27/2015 Check STUBHUB, INC R -        $99.75

09/09/2015 Check STUBHUB, INC R -        $294.75

09/24/2015 Check STUBHUB, INC R -        $999.00

11/16/2015 Check STUBHUB, INC R -        $262.40

12/31/2015 Check STUBHUB, INC R -        $1,370.37

02/23/2016 Expense STUBHUB, INC - PURCHASE 02/22 866-788-2482

CA CARD 4114 R -        $1,846.00

02/29/2016 Expense STUBHUB, INC PURCHASE 02/28 866-788-2482

CA CARD 4114 R -        $334.45

03/14/2016 Expense STUBHUB, INC PURCHASE 03/13 866-788-2482

CA CARD 4114 R -        $159.10

04/29/2016 Expense STUBHUB, INC PURCHASE 04/28 866-788-2482

CA CARD 4114 R -        $242.24

07/15/2016 Expense STUBHUB, INC PURCHASE 07/14 866-788-2482

CA CARD 4114 R -        $388.98

07/15/2016 Expense STUBHUB, INC PURCHASE 07/14 866-788-2482

CA CARD 4114 R -        $533.20

0/17/2016 Expense STUBHUB, INC PURCHASE 10/13 866-788-2482

CA CARD 4114 R -        $473.72

02/05/2018 Expense STUBHUB, INC. PURCHASE 02/03 866-788-2482

CA CARD 4114 R -        $1,937.60

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482

CA CARD 4114 R -                                   $62.94

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482

CA CARD 4114 R -                                   $18.49

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482

CA CARD 4114 R -                                   $523.56

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482

CA CARD 4114 R -                                   $70.65

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482

CA CARD 4114 R -                                   $590.52

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482
CA CARD 4114 R -                                   $1,006.58

03/26/2018 Expense STUBHUB, INC. PURCHASE 03/25 866-788-2482
CA CARD 4114 R -                                   $190.50

03/29/2018 Expense STUBHUB, INC. PURCHASE 03/28 866-788-2482
CA CARD 4114 R -                                   $38.79

03/30/2018 Expense STUBHUB, INC. PURCHASE 03/29 866-788-2482
CA CARD 4114 R -                                   $39.34

03/30/2018 Expense STUBHUB, INC. PURCHASE 03/29 866-788-2482
CA CARD 4114 R -                                   $261.60

04/16/2018 Expense STUBHUB, INC. PURCHASE 04/13 866-788-2482
CA CARD 4114 R -                                   $614.86

04/20/2018 Expense STUBHUB, INC. PURCHASE 04/19 866-788-2482
CA CARD 4114 R -                                   $1,063.83

05/04/2018 Expense STUBHUB, INC. PURCHASE 05/03 866-788-2482
CA CARD 4114 R -                                   $2,299.34

16.     While the total of the foregoing payments to Stubhub total $20,743.32, as opposed to the ZERO DOLLARS being offered to unsecured creditors, the other important factor

is that of the charges identified above as being paid by a credit card ending in *#4114*, which also includes the withdrawal for the purchase on card #4114, on January 14, 2019, of $1,907.85, the Debtor has contrary to this Court's Order not produced any records pertaining to this credit card account.

17. In line with the foregoing, but still not at the very heart of the most troubling withdrawals/transfers from the Debtor, attached hereto and made a part hereof as Composite Exhibit 4, are the Debtor's records, Bates stamped numbered 02939 through 02943, which are found beginning at page 32, of the PDF document, Composite Exhibit 4, and labeled as "National Radiology Consultants PA – **Balance Sheet** – as of July 13, 2019." When this highlighted spreadsheet Exhibit is examined, in the "Liabilities" section, under the heading of Credit Cards, there are four identified American Express credit cards, one in the name of Dr. J. Okoh and another in the name of "D. Okoh" his wife.

18. Looking at this Balance Sheet Exhibit, beginning on the second page, Bates Numbered 2940 and starting under the last column indicating a time reference of February, 2017, the outstanding balances start to be shown on the two cards belonging to Dr. Okoh and his wife. On the third page of the five-page Composite Exhibit 4, significant balances appears as due to American Express whereby as of November, 2017, the credit card belonging to Dr. Okoh shows an outstanding balance due of $54,806.77 and the credit card balance due on the card belonging to his wife, is shown as $190,040.46. In the next month of December, 2017, this Balance Sheet record shows the prior balance due on Dr. Okoh's card of $54,806.77, was paid in full, leaving a "zero" balance at the end of this month and a payment in the amount of $140,163.82, was made against the above balance due on his wife's credit card, thereby leaving a remaining balance due of her card of $49,876.64. The Balance Sheet record then goes on to show further charges and

payments against both of the accounts, however as stated previously, the Debtor has not produced any of the American Express credit card records.

19. For the purpose of full disclosure to the Court, the US Trustee, the Debtor and all other interested Creditors/Parties, a preliminary examination of the supplemental records produced as a result of the Court's Orders, identified the following suspect transactions among others representing withdrawals/payments and expenses coming out of the Debtor's accounts.

Northland Christ School Payment 160511 James Okoh **$16,661.00** - 5/12/16 – Bates # 01406

05/21/2015 Check Berkleecomusic R - $8,803.00 – Bates # 02995

09/04/2015 Check Berklee College Tuition? donation? R - $5,836.00 - – Bates # 03008

Berklee College Purchase Authorization $6,221.00 - 5/12/16 – Bates # 01406

12/21/2016 Expense OPC*BERKLEE COLLEGE PURCHASE 12/20 866-487-4567 MA CARD 4114 R - $2,544.01 - – Bates # 03072

Berklee College of Music, Boston, MA. – **TOTAL** of above payments - **$23,404.01**

Tampa Bay Buccaneers ticket purchase authorization $4,083.38 - 5/4/15 – Bates # 02992

Tampa Bay Buccaneers ticket purchase authorization $1,975.00 - 6/3/15 – Bates # 02996

Tampa Bay Buccaneers ticket purchase authorization $395.00 - 9/25/15 – Bates # 03011

Tampa Bay Buccaneers ticket purchase authorization $2,370.00 - 9/25/15 – Bates # 03011

Tampa Bay Buccaneers ticket purchase authorization $5,925.00 - 5/12/16 – Bates # 01406

Tampa Bay Buccaneers ticket purchase authorization $4,004.13 - 3/17/16 – Bates # 01345

Tampa Bay Buccaneers ticket purchase authorization $4,004.12 - 4/16/16 – Bates # 01377

Deseere Okoh bill pay online no account number **$10,000** - 3/18/16 – Bates # 01345

JetBlue Airlines purchase Salt Lake City Utah $2,145.33 - 4/22/16 – Bates # 01377

Pinnacle Lodging purchase authorization $1,911.25 - 2/6/18 – Bates # 01325

Ritz-Carlton Coconut Grove Florida purchase authorization $4,069.33 -4/2/18 – Bates # 01388


Tesla Motors 07/24/2015 Bill Payment (Check) R - $2,000.00

Tesla Motors Deposit Purchase 04/09/16 650-681-5000 CA CARD 4114 R - $2,500.00

04/11/2016 Tesla Motors DEPOSIT PURCHASE 650-681-5000 CA CARD 4114 R -$2,500.00

Tesla Motors Deposit Purchase authorization $2,500.00 - 5/12/16 – Bates # 01406

Tesla Motors Deposit Purchase 05/06 650-681-5000 CA CARD 4114 R - $2,500.00

08/01/2016 Check 2201 Tesla Motors 2201 R - $401.00

08/02/2016 Tesla Motors 648698510834 JAMES OKOH R - **$21,138.83** - Bates # 03053

10/19/2016 Expense ADY*Tesla Motors PURCHASE CA CARD 4114 R - $1,155.60


WESTIN (WESTIN HOT PURCHASE) 07/31/16 DENVER CO CARD 4114 R -$626.21

HERTZ RENT-A-CAR PURCHASE 07/29/16 DENVER CO CARD 4114 - $2,589.65

PARAGON LODGING PURCHASE 07/30/16 970-5472122 CO CARD 4114 - $9,019.43

05/12/2016 Bill Payment (Check) 205 PRECISE CONSTRUCTION ID2438 R - **$16,207.49** – Bates # 03041

05/12/2016 Bill Payment (Check) 209 BMW CARD SERVICES 9717 R - $2,000.00

05/20/2015 Check HUNTER'S GREEN 1022 R - $1,200.00 — Bates # 02995

05/10/2016 Expense Ruth's Chris Steak Purchase 05/09 TAMPA FL CARD 4114 R - $284.69

River Ridge re. Breckenridge purchase authorization $2,858.25 - 5/24/19 – Bates # 01427

20. As this Court is additionally aware, VRAD has been forced to file its Motion to Enforce this Court's Orders and to Compel the Debtor to Produce All Court Ordered Business Records and Corresponding Motion for Sanctions in light of the Debtor's failure to produce all of the court-ordered documents. Specifically the Debtor has failed to provide the ledgers and supporting records regarding several disclosed credit card accounts, including one in the name of Dr. Okoh and another in the name of his wife, Deseere Okoh, where we know that on both accounts there were significant credit card expenses and charges throughout the period of time including all of the year 2017 and the filing of the petition. Therefore, although the Court has already ordered the Debtor to produce these records, obviously VRAD has been unable to determine whether further inappropriate expenses or impermissible transfers may have also occurred more frequently during this time. VRAD respectfully submits that while the evidence produced thus far is sufficient to warrant the granting of this motion and the appointment of an independent Trustee, it therefore still reserves its right to supplement this motion based upon the further investigation and examination of the additional records the Debtor still must produce.

21. As the Court is aware based upon the filed objections to the Amended Plan, it proposes to name and keep in place Mr. John Patrick as the disbursing agent to be vested with sole control and overbroad authority to determine whether any actions are to be brought concerning any associated illegal or fraudulent transfers or withdrawals from the Debtor. In light of his prior financial and business relationship with Dr. Okoh, clearly Mr. Patrick's prepetition history and his relationship with the Debtor and Dr. Okoh brings into question his ability to fairly evaluate claims the Debtor may possess against insiders and prepetition vendors which is detrimentally prejudicial to the interests of all general unsecured creditors. It further appears that there are no controls in place on Mr. Patrick's authority and ability to deplete or strip the Debtor's estate of assets, or

abandon them to the Debtor again to the detriment of the unsecured creditors. Therefore given this inter-relationship between Mr. Patrick and Dr. Okoh when viewed in context of the proposed third-party releases incorporated into the plan, it appears that the principal purpose of the plan is the protection of Dr. Okoh, as well as his wife who has been working with the finances of the Debtor company, from their personal liability regarding both the full extent of any illegal and improper payments, withdrawals or disbursements which were made to them or for their benefit, as well as trying to release and protect them from liability for any and all other possible fraudulent transfers and/or conveyances which may have occurred and for which discovery is being sought. Assuming the requested third-party releases and injunctions in favor of Dr. Okoh are not included in any confirmed plan, it is obviously not in the best interests of either VRAD or any of the other general unsecured creditors to have anyone other than a court-appointed Trustee administer the remaining affairs of the Debtor to pursue any and all actions which can lead to the recovery of additional assets for the estate.

22. In further support of VRAD's Motion to convert this case and have the Court appoint an independent Trustee, the Court's attention is directed to the following concerning the ongoing investigation regarding the proof of the Debtor's claim that its financial disclosure of an outstanding loan due from Dr. Okoh in its "Balance Sheet as of July 13, 2019" in the amount of "Due From Shareholder $265,934.90" - Bates # 02908, was a mistake and instead Dr. Okoh had contributed those funds to the Debtor from his 401(k) Plan.

23. What we now know from the Debtor's supplemental production of documents is that with regard to the loan from J.P. Morgan Chase to the Debtor for $1 million on February 8, 2017, it was in fact a line of credit authorization agreement, whereby the funds were disbursed to the Debtor on an incremental basis. Therefore irrespective of the second loan made by J.P.

Morgan Chase to the Debtor of $400,000.00, which proceeds were used to pay off the prior line of credit loan in favor of Wells Fargo Bank, the disbursements on the $1 million line of credit are shown on the schedule prepared by the Debtor – Bates # 00604, a copy of which is attached hereto as <u>Exhibit 5</u>. This record shows a disbursement/funding of $400,000.00 was made on February 8, 2017 and that a $50,000.00, disbursement was made on February 21, 2017.

24. Attached hereto and made a part hereof as <u>Composite Exhibit 6</u>, is the Debtor's February 1, 2017 to February 28, 2017, Wells Fargo Business Bank Statement – Bates # 01317 thru # 01323. It first shows an incoming wire from J.P. Morgan Chase Bank of $200,000.00, and then another incoming wire from J.P. Morgan Chase Bank of $190,000.00.

25. However, this same bank statement for February, 2017, also reflects that there were withdrawal/debits designated as payments to "**<u>Tax/401K</u>**" of the following sums:

    a.    $1,125.33;
    b.    $19,775.99;
    c.    $32,455.52; and
    d.    $54,561.79.

The foregoing totals: **<u>$107,918.63</u>** and represents a transfer into the 401K plan of 27.67% of the initial funding received from J.P. Morgan Chase Bank.

26. Irrespective of the foregoing transfers, based on the supplemental records produced by the Debtor they reflect over time there were many other prior withdrawal/debits into the 401(K) Plan for significant amounts, which all apparently total the sum of **<u>$1,340,306.70</u>**, as evidenced by the Debtor's Bates stamped records included within the attached <u>Composite Exhibit 7</u>, which are made a part hereof, despite the fact that at the material times in question, numerous debts to unsecured creditors remained past due and unpaid. As the Court is also aware, VRAD has moved to compel the Debtor to specifically produce all records related to all deposits and withdrawals regarding the 401(k) Plan and since these records have not been produced, it remains possible that

certain of the deposits to the 401(k) Plan may be appropriate deposits of individual funds but this will not be determined until the Debtor provides all of the sufficient documentation to confirm whether this is the case.

27.     Accordingly, VRAD respectfully submits that in light of the unquestioned proof as already demonstrated by the Debtor's own records, showing Dr. Okoh has intentionally misused and mismanaged the Debtor for his own personal gain and to insure his own personal expenses, as well as his family's would be paid by the Debtor, it is imperative for the Court to convert this case and appoint an independent Trustee in order to conduct a forensic examination of the Debtor's business records and accounts and thus determine whether or not any funds were improperly transferred or conveyed, fraudulently or illegally, to the detriment of all the unsecured creditors. Where it has been shown the Debtor's business operation was conducted dishonestly, then the Debtor is not to be granted the privilege of being allowed to formulate a plan for liquidation of the company, such as the one which has been proposed. VRAD respectfully requests the relief it is seeking for the conversion of this case in order to appoint a Trustee be granted.

Wherefore, based upon the foregoing grounds and the evidence submitted it is respectfully requested by Creditor, VIRTUAL RADIOLOGIC PROFESSIONALS OF ILLINOIS, S.C., INC. for this Court to convene a hearing and thereafter determine that the relief requested for the conversion of this case and the appointment of an independent Trustee be Granted, as it is in the best interest of all the creditors of the Debtor's estate and to thereby enter any and all appropriate orders effecting such relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished electronically using the Court's CM/ECF system on this 30th day of July, 2019, to all parties in interest who have appeared in the case and as reflected on the attached Service List.

SERVICE LIST
DANIEL E. ETLINGER, ESQ.
Via Email: detlinger@jennislaw.com
DAVID S. JENNIS, ESQ.
Via Email: djennis@jennislaw.com

Attorneys for Debtor,
NATIONAL RADIOLOGY CONSULTANTS, P.A.,
JENNIS LAW FIRM
606 East Madison Street
Tampa, FL 33602
PH: 813-229-2800; FAX: 813-229-1707

RICHARD J. STONE, ESQ.
RICHARD J. STONE, P.A.
Attorney for Creditor,
Virtual Radiologic Professionals of Illinois, S.C., Inc.,
9350 S. Dixie Highway – Suite 1455,
Miami, FL 33156
PH: 305-670-2080; FAX: 305-670-2345
EMAIL: rich@rjstonelaw.com

BY: _____
RICHARD J. STONE, ESQ.